**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 05-110 (JRT/RLE) |
| Plaintiff, | |
| v. | **ORDER ADOPTING IN PART REPORT AND RECOMMENDATION** |
| (1) JORGE PRADO MONTANO,<br>    a/k/a Alfredo Gonzalez, | **OF MAGISTRATE JUDGE** |
| (2) DAVID JIMENEZ,<br>    a/k/a/ David Jimenez Delamora,<br>    a/k/a David Noe, | |
| Defendants. | |

Elizabeth C. Peterson, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, Minneapolis, MN, for plaintiff.

Andrew H. Mohring, Assistant Federal Public Defender, **OFFICE OF THE FEDERAL PUBLIC DEFENDER**, 107 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN, 55415, for defendant Montano.

Thomas C. Plunkett, **PLUNKETT LAW OFFICE**, 444 Cedar Street, Suite 950, St. Paul, MN 55101, for defendant Jimenez.

Defendants Jorge Prado Montano ("Montano") and David Jimenez ("Jimenez") are each charged with one count of conspiracy to distribute, and to possess with intent to distribute, in excess of fifty grams of methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, as well as with one count of aiding and abetting possession with intent to distribute methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Defendants moved to suppress

statements and evidence. Following a hearing, United States Magistrate Judge Raymond L. Erickson recommended granting in part and denying in part defendants' motions.

The prosecution and the defendants have both filed objections to the Magistrate Judge Report and Recommendation dated August 17, 2004. In addition, the prosecution has filed a Motion to Supplement the Record before the Magistrate Judge, which directly relates to the prosecution's objections to the Report and Recommendation. That motion is currently pending. Therefore, the Court will reserve ruling on the prosecution's objections until that motion has been decided. The Court has conducted a *de novo* review of the defendants' objections pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.1(c)(2), and for the reasons set forth below, overrules the defendants' objections and adopts the Report and Recommendation of the Magistrate Judge in that respect.

**BACKGROUND**

On March 3, 2005, at approximately 9:30 a.m., Minnesota State Patrol Trooper Jason Steinert ("Steinert") came upon a stalled vehicle on the shoulder of the highway. Steinert turned on his lights and stopped to check on the vehicle, a small pickup truck with Washington license plates. Two men exited the vehicle and started walking towards Steinert's patrol car; Steinert got out of his car and met them halfway.

The man who got out of the driver's side of the vehicle identified himself as "Alfredo Gonzales," and the man who got out of the passenger side identified himself as "Noe." The two men were later identified as Montano and Jimenez, respectively. The

men informed Steinert that they had run out of fuel, and that their cell phone battery was dead. Steinert asked them for identification. Montano walked back to the truck to look for some identification; Steinert followed him, and stood directly over Montano's shoulder as he got in the truck. Steinert noted that Montano did not look in the glove compartment, or in the center console, as most people would do, and it appeared to him that Montano was not searching for identification at all, although he did shuffle through some papers. Rather, Montano seemed to be more concerned with where Steinert was looking. Montano then got out the vehicle and informed Steinert he did not have any identification. Montano appeared nervous.

Jimenez also looked in the vehicle for identification, but, like Montano, did not appear to undertake a serious search, and rather watched Steinert over his shoulder. Jimenez appeared nervous and said he could not find his identification. Jimenez told Steinert that the vehicle belonged to his brother, and they had traveled to Minnesota to sell it. Steinert, however, was suspicious of this story, as the vehicle contained no luggage (as one would expect in a trip from Washington to Minnesota), and had only a few fast food wrappers in it.

Steinert told them that they needed to have some identification, at which point Montano produced a copy of a California driver's license with the name "Alberto Gonzales" (the name Montano had given Steinert). Steinert testified at the suppression hearing that, at this point, the men were not free to go, but that he had not advised them of their *Miranda* rights because he was simply asking the men general questions in order to ascertain their identities. Steinert asked Jimenez to get in the squad car. Before he got

into the squad, Steinert patted him down, and discovered a lighter and a ticket from Washington with a different name on it. Jimenez explained that he was taking care of the ticket for a friend, but that he had received tickets in Minnesota, and that his tickets would be on his record. However, when Steinert ran Jimenez's name, it was not on file and there were no recorded tickets to that person. Further, the vehicle registration produced by the men was not complete and did not have either of their names on it, and there were no insurance cards for the vehicle.

Steinert asked similar questions of Montano and received inconsistent answers. Because neither of the men had driver's licenses, and because there was no proof of ownership of the vehicle, Steinert radioed for more officers, and then continued to try to verify their identities. Steinert separated the men; Jimenez was patted down and seated in Steinert's squad car, Montano was seated inside the truck.

When the other officers arrived, Montano was also placed in a squad car. In addition, because neither of the men had driver's licenses, the officers decided to arrest the men and tow the vehicle.

Steinert testified that the bases for arresting Jimenez and Montano were the provision of false identification, the lack of valid driver's licenses, and the absence of insurance cards for the vehicle. He further testified that it is policy to tow vehicles when a custodial arrest has been made. Steinert also stated that neither a search warrant nor a consent to search had been obtained. An inventory search was conducted in connection with the arrests and seizure of the vehicle.

Steinert and another officer began the inventory search. The inventory search yielded a pistol, drug paraphernalia, and a white crystal substance that the officers suspected was methamphetamine. Steinert testified that he did not ask Montano about any of the items that were found, and that Montano did not make any statements about those items. Montano and Jimenez were taken to the Stearns County Jail.

Almost twelve hours after Steinert first stopped by the defendants' truck, Minnesota State Patrol Officer Jeffrey K. Sharp ("Sharp") traveled to the Stearns County Jail to interview defendants. Sharp met with Jimenez in an interview room in the holding area. He was wearing plain clothes, was not armed, and identified himself to Jimenez. Sharp testified at the suppression hearing that he administered the *Miranda* warning to Jimenez from memory and made sure that he understood each individual right before continuing. Sharp believed that Jimenez understood his rights and chose to waive them. Sharp interviewed Jimenez for approximately fifteen minutes, when Jimenez told him he did not want to answer any more questions. Jimenez never asked for a lawyer.

Shortly thereafter, Sharp interviewed Montano. As he had done with Jimenez, he administered the *Miranda* warning, which, according to Sharp, Montano understood and chose to waive. After roughly 30 minutes, Sharp completed his questioning, and the interview terminated.

## ANALYSIS

I.  **DEFENDANTS' OBJECTIONS TO DENIAL OF MOTION TO SUPPRESS STATEMENTS MADE TO STEINERT AND EVIDENCE FROM VEHICLE.**

Defendants object to the Report and Recommendation, arguing that they were subjected to custodial interrogation by Steinert at the site of the traffic stop without a *Miranda* warning, that the search of the truck was unlawful, and the evidence from the truck should be suppressed. The Court disagrees.

The roadside encounter during which the defendants answered Steinert's questions began as a consensual encounter, during which Steinert permissibly asked the defendants to identify themselves. *Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."); *see also United States v. Ortiz-Monroy*, 332 F.3d 525, 528 (8th Cir. 2003) (holding that encounter between officer and defendant parked at rest area was consensual). Receiving inconsistent answers, Steinert developed a reasonable suspicion that they were lying and might be concealing criminal activity. Steinert was, thus, entitled to ask further questions to obtain information relevant to this suspicion. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968) (an officer with "reasonable suspicion" that "criminal activity may be afoot" may detain an individual and ask a moderate number of questions to determine identity and obtain information relevant to the officer's suspicion without triggering the detainee's *Miranda* rights); *see also United States v. Pelayo-Ruelas*, 345 F.3d 589, 592 (8th Cir. 2003).

The questions revealed that neither defendant had a driver's license or owned the car they were driving and that the vehicle was not carrying proof of insurance, providing probable cause to arrest the defendants. *United States v. Travis*, 993 F.3d 1316, 1323 (8th Cir. 1993) (a warrantless arrest is valid if an officer has probable cause to believe a person has committed or is committing an offense). The officers appropriately conducted an inventory search in connection with defendants' arrest. *See New York v. Belton*, 453 U.S. 454, 461 (1981) (officers may search a vehicle without a warrant if the search is incident to a valid arrest); *United States v. Stephens*, 350 F.3d 778, 780 (8th Cir. 2003) (an inventory search of a vehicle is appropriate if officers are unable to release a vehicle to its occupants because the occupants cannot produce valid driver's licenses); *see also United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004).

The entire encounter occurred outside, on the side of the Interstate, in public view. Neither defendant indicated an unwillingness to answer any of Steinert's questions, and there is no assertion that Steinert used strong-arm tactics during the encounter. Once the related inventory search revealed additional evidence of criminal activity, the officers refrained from asking additional questions.

The Court finds that the encounter stayed well within the bounds of a *Terry* stop and did not evolve into a custodial interrogation. *See United States v. Griffin*, 922 F.2d 1343, 1357 (8th Cir. 1990) (enumerating factors relevant in determining whether a person was in custody). Accordingly, *Miranda* warnings were not required, and the defendants' statements during the roadside encounter need not be suppressed. *See Stansbury v. California*, 511 U.S. 318, 322 (1994) (*Miranda* warnings are required before any official

interrogation where the subject has been "taken into custody or otherwise deprived of his freedom of action in any significant way.") (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).  Similarly, the arrest, search, and evidence discovered after those statements do not need to be suppressed.

**II.    PROSECUTION'S OBJECTIONS TO GRANTING OF MOTION TO SUPPRESS STATEMENTS MADE TO SHARP.**

In the Report and Recommendation, the Magistrate Judge suppressed defendants' statements to Sharp because the prosecution did not carry its burden of proof that Sharp properly administered *Miranda* warnings to defendants.  The prosecution has objected to that section of the Report and Recommendation, and has also filed a motion to supplement the record.  This Court referred the motion to supplement the record to the Magistrate Judge.  Because the motion to supplement the record is pending, and because it may impact the prosecution's objections, the Court will reserve ruling on the prosecution's objections until that motion has been decided.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** the defendants' objections [Docket Nos. 69 and 71] and **ADOPTS** the portions of the Report and Recommendation [Docket Nos. 61 and 62] in that respect. Accordingly, **IT IS HEREBY ORDERED** that:

1.    Defendant Jimenez's motion to suppress all physical evidence [Docket No. 25] is **DENIED.**

- 9 -

2.  Defendant Montano's motion to suppress evidence obtained as result of March 5, 2005 search and seizure [Docket No. 50] is **DENIED**.


DATED: August 3, 2005             s/ John R. Tunheim
at Minneapolis, Minnesota.        JOHN R. TUNHEIM
                                  United States District Judge